IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 3529 |
| v. | ) | |
| | ) | District Judge Sharon Johnson Coleman |
| C.R. BARD, INC., | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER[1]

Before us is a motion to compel by Plaintiff, Medline Industries, Inc., ("Plaintiff" or "Medline"), asking that the Court order Defendant C.R. Bard, Inc. ("Defendant" or "Bard") to produce opinions of counsel Bard obtained regarding whether certain of its products infringe Medline patents. (D.E. 209). The matter is now fully briefed, and for the reasons stated herein, we deny Plaintiff's motion to compel.

I.      Background

We set forth only those background facts that are relevant to our decision. Medline has filed three lawsuits[2] against Bard accusing it of infringing various Medline patents for its medical catheters and related items; included in each complaint is a claim for willful infringement, which carries with it the possibility of enhanced damages pursuant to 35 U.S.C. § 284. (D.E. 1: Complaint). As part of its response to the claim of willful infringement, Bard has asserted the "advice of counsel" defense, stating that it relied on the opinion of counsel that its products do not

---

[1]On May 31, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment. (D.E. # 31).

[2] The instant case, filed in 2016, is known as "Medline II". The other matters are docketed as case number 14 C 3618 ("Medline I"), and case number 17 C 7216 ("Medline III").

infringe Medline's patents. (D.E. 218: Def. Resp. to Mot. at 4). To date, Bard has produced eight

opinions that concern each of the patents asserted as being infringed in all three lawsuits Medline

has filed against Bard (the "Asserted Patents"). The instant case alleges infringement of three of

the Asserted Patents: the '352 patent, the '452 patent, and the '753 patent. (D.E. 91: Amended

Complaint ¶¶ 36, 57, 85).

Medline contends that it is entitled to additional opinions of counsel obtained by Bard,

beyond the eight opinions Bard has produced concerning the Asserted Patents. These additional

opinions sought by Medline concern "closely related patents that are identical in the content of

their disclosures" to the Asserted Patents, Medline argues. (Pl. Mot. to Compel at 1). Elsewhere in

its briefs, Medline explains that the additional opinions it seeks, on unasserted patents, are in the

same "patent family" as the Asserted Patents. Medline gives examples of some of these patents,

variously describing them as being a "continuation" or "continuation-in-part" of the Asserted

Patents; a "division" of the unasserted patents; or as sharing the "same specifications, and similar

claim limitations" as the Asserted Patents. (Pl. Mot. to Compel at 2.) Medline states that,

accordingly, "the text and drawings of these patents are identical." (*Id.*)[3] Bard does not deny

Medline's characterizations of the asserted and unasserted patents, although it disputes any

implication that patents in the same family are subject to particular legal rights or obligations.

In its initial memorandum in support of its motion to compel, Medline contends that Bard

has refused to acknowledge whether it has received additional opinion letters on the unasserted

patents and has refused to produce any additional opinion letters beyond the ones it already has

---

[3] The unasserted patents for which Medline seeks opinion letters from Bard include the '812 patent, which is said to be a division of asserted patent '452, which itself is said to be a continuation of patent '935, asserted in Medline I, and the '756 patent, which is said to be a continuation of the '190 patent, also asserted in Medline I, and which is said to be a continuation-in-part of the '761 patent, asserted in Medline III. Bard has produced opinions on the '452 patent, the '935 patent, the '190 patent, and the '761 patent, in addition to other opinions on the patents asserted in the three lawsuits.

produced regarding the Asserted Patents. (Pl. Mot. to Compel at 3.) In its response, Bard indicates

it did receive opinions on unasserted patents but does not identify how many other opinions it may

have obtained or what patents these other opinions concern. (D.E. 218: Def. Resp. to Mot. at 1).

Bard objects to producing opinions regarding unasserted patents on the grounds that such opinions

are protected by the attorney-client and work-product privilege and that its having produced the

eight opinions on the Asserted Patents did not waive any privileges applicable to opinions it

received concerning unasserted patents. Whether any privilege waiver has occurred depends

largely on whether the opinions Bard seeks to protect are part of the "same subject matter" as the

opinions it already produced – thus admittedly waiving privilege – concerning the Asserted

Patents.

## II.    Legal Issues

"Federal Circuit law applies when deciding whether particular written or other materials

are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *In

re EchoStar Communications Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006), *citing Advanced

Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001). A remedy for

willful patent infringement is specifically provided for in the Patent Act, *see* 35 U.S.C. §§ 284–

285; therefore, questions of privilege and discoverability that arise from assertion of the advice-

of-counsel defense necessarily involve issues of substantive patent law. *See In re Spalding Sports

Worldwide, Inc.*, 203 F.3d 800, 803–04 (Fed. Cir. 2000) (applying Federal Circuit law to question

of attorney-client privilege between patent attorney and patentee).

### A.    Willfulness

The standard for finding willful infringement of another's patent was recently revised by

the Supreme Court in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, ___ U.S. ___, 136 S. Ct.

1923 (2016). In abrogating the previous two-part test for assessing enhanced willfulness damages set forth in *In re Seagate Technology, LLC*, 497, F.3d 1360 (Fed. Cir. 2007),[4] the Court stated that "[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo,* 136 S. Ct. at 1932. While district courts have discretion to decide whether an infringer's behavior rises to that standard, such findings "are generally reserved for egregious cases of culpable behavior." *Id.* A patentee need only show by a preponderance of the evidence that the facts support a finding of willful infringement. *Id.* at 1934. *See also SRI Int'l Inc. v. Cisco Systems, Inc.*, 2017-2223, 2019 WL 3162421 (Fed. Cir., July 12, 2019).

It is well-settled that an important factor in determining if willful infringement has been shown is whether the alleged infringer obtained an opinion of counsel. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1191 (Fed. Cir. 1998). Whether the accused infringer obtained an opinion of counsel bears upon a court's determination of "whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." *SRI Int'l, Inc. v. Advanced Tech. Laboratories, Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997). The receipt of legal advice alone does not *per se* absolve an alleged infringer of the charge of willfulness; the legal opinion must be competent before a finding of reasonable reliance on that opinion may be made. *Comark,* 156 F.3d at 1191. Factors that bear on the competence of a legal opinion include the nature of the advice, the thoroughness and competence of the legal opinion, and its objectivity. *SRI Int'l, Inc.* 127 F.3d at 1465. A court will

---

[4] *Seagate* had required a patentee to establish, by clear and convincing evidence, both that there was an objectively high likelihood that the accused infringer's actions constituted patent infringement, and that the risk was "either known or so obvious that it should have been known to the accused infringer." *See* 497 F.3d at 1371. The Supreme Court rejected this approach and explained that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo* 136 S. Ct. at 1932. The Supreme Court also rejected the use of a clear and convincing standard in favor of a preponderance of the evidence standard. *Id.* at 1934.

determine whether the advice of noninfringement, invalidity or unenforceability could have reasonably been relied on, and whether, on the totality of the circumstances, exculpatory factors avert a finding of willful infringement. The totality of the circumstances may include not only such aspects as the closeness or complexity of the legal and factual questions presented, but also commercial factors that may have affected the infringer's action. *Id.*

## B. Waiver of Attorney-Client Privilege

The attorney-client privilege serves the important policy of fostering "full and frank communication between attorneys and their clients and thereby promote [s] broader public interest in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *see also United States v. Frederick,* 182 F.3d 496, 500 (7th Cir. 1999) ("the attorney-client privilege is intended to encourage people who find themselves involved in actual or potential legal disputes to be candid with any lawyer they retain to advise them".)

"Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived." *EchoStar,* 448 F.3d at 1299. In the context of responding to a claim of willful infringement of a patent, the defense of reasonable reliance on an attorney's advice waives the attorney-client privilege with respect to "all other communications relating to the same subject matter." *Id.* The focus in any waiver analysis is on the intent of the alleged infringer, not the state of mind of counsel, *Steelcase Inc. v. Halworth, Inc.,* 954 F. Supp. 1195, 1198 (W.D. Mich. 1997), and the goal of determining waiver in patent infringement cases is to prevent a party from using advice it received as both a sword – disclosing those opinions favorable to its position – and as a shield, by asserting privilege over unfavorable advice. *EchoStar,* 448 F.3d at 1303. Thus, the Federal Circuit in *EchoStar* held that "when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a

particular patent, it waives immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused." *Id.* at 1304.

Beyond the guidance of *EchoStar*, the Federal Circuit has not spoken definitively on what communications comprise the "same subject matter" for the purposes of a waiver analysis, and there is minimal analysis by the district courts regarding the issue as well.[5] Plaintiff argues that the sparse caselaw nonetheless counsels in favor of a broad waiver of the privilege, one broad enough to encompass all opinions of counsel Defendant has obtained on unasserted patents that are related to the Asserted Patents.[6] In contrast, Defendant contends that its waiver extends only as far as communications regarding the opinions on the Asserted Patents, and that any opinions it might have obtained regarding unasserted patents are not within the same subject matter and thus, it has not waived either the attorney-client or work-product privileges with respect to the unasserted patents.

## C.    Same Subject Matter

Medline argues that opinions on unasserted patents fall within the same subject matter as the opinions on the Asserted Patents because they are relevant to the question of whether the Asserted Patent opinions are competent and whether Bard's reliance on them is reasonable. (Pl. Mot. to Compel at 5-6). Plaintiff's arguments seem to rest on the suggestion that it needs to see the opinions on unasserted patents because these other opinions *could* be inconsistent with the opinions on the Asserted Patents in the way that counsel described the allegedly infringing

---

[5] In its brief, Medline acknowledged that there is no bright-line test for determining what constitutes the subject matter of a waiver. (Pl. Mot. to Compel at 5).

[6] We use the term "related patents" to describe what Medline also calls as being part of the same patent family, *i.e.*, all unasserted patents for which Medline seeks opinion letters prepared for Bard.

products, construed the text, drawings and claim limitations, and/or rendered opinions on unasserted patents after claim construction orders were issued in the three lawsuits on the Asserted Patents. (*Id.*). The cases Medline offers in support merely state the general standard that legal opinions must be competent before a party may reasonably rely on them. *See, e.g., Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983) (relying on advice obtained only after commencement of allegedly infringing activities called good faith reliance on advice into question); *Johns Hopkins Univ. v. Cellpro, Inc.* 152 F.3d 1342, 1364 (Fed. Cir. 1998) (noting that thoroughness of opinion is one factor in measuring its competence.)

Medline's argument in favor of including opinions on unasserted (but related) patents in the scope of Bard's waiver is not supported by law. While we refrain from holding that information gleaned from unasserted patent opinion letters could *never* bear on the competence or consistency of an asserted patent opinion, we similarly refuse to say, as Medline appears to imply, that the possibility of relevance makes unasserted patent opinions *per se* part of the "same subject matter" as those for asserted patents. We have found no case – out of the Federal Circuit or otherwise – that rests the issues of reliability, competence or consistency of an opinion letter on statements made in subsequent opinions on patents that are unasserted but are in the same patent family. Medline offers two pre-*EchoStar* cases in which a district judge ordered the production of communications regarding unasserted patents. Both instances are distinguishable.

In *Viskase Corp. v. American Nat. Can Co.*, 888 F. Supp. 899 (N.D. Ill. 1995), the defendant raised the advice-of-counsel defense and produced three opinion letters and other communications that discussed the patents-in-suit while redacting references to other patents owned by plaintiff as well as patents owned by third parties. Defendant argued that it was entitled to redact the information about all patents except for those asserted the lawsuit; the court disagreed

7

and ordered defendant to produce the communications in unredacted form. The information ordered produced included a list of patents defendant's counsel had considered as having the potential to be infringed by defendant's products; the court found there was no way to tell which of the numerous patents being discussed were related to the subject matter of defendant's waiver of privilege. *Viskase*, 888 F. Supp. at 900. Moreover, notes of two meetings that discussed both the patents-in-suit and these other patents commingled the analysis of which patents might or might not infringe plaintiff's asserted patents. *Id.* at 901. Specifically, the court explained that "under the circumstances, the subject matter in question extends at least to discussions of patents that are so closely related in kind that a discussion of how to avoid infringement of the patents in suit also involved a discussion in avoiding infringement of these patents." *Id.*

In *Steelcase Inc. v. Haworth*, 954 F. Supp. 1195, 1201 (W.D. Mich. 1997), the court first ordered that defendant must produce in unredacted form all opinion letters written about the patents asserted in that case, despite the fact that defendant contended that the redacted material was irrelevant. The court also ordered defendant to produce in their entirety internal notes, memos, and correspondence with its counsel that had been redacted to omit references to unasserted patents on the ground that they concerned defendant's state of mind. *Id.* Medline points specifically to the court's comment that a subject-matter waiver is "not necessarily limited to the precise patents-in-suit" and that "advice concerning unasserted but related patents falls within this purview." *Id.* at 1200.

As we noted above, both of these cases pre-date *EchoStar*, which, while not specifically stating that the "same subject matter" is limited to communications about asserted patents, does refer to willful infringement "of a particular patent" and advice concerning "whether that patent is valid, enforceable, and infringed by the accused." 448 F.3d at 1304. *EchoStar* goes no further; it

8

refers to the "same subject matter" – for waiver purposes – only in terms of "that patent" and not, for example, "that patent and other related patents that are unasserted in the lawsuit but are in the same patent family." Moreover, both *Viskase* and *Steelcase* involved situations in which communications about asserted patents were commingled (in the same document) with discussion and analysis about non-asserted (and even third-party) patents. The courts in both cases noted the difficulty in separating discussion and analysis about asserted patents with that from non-asserted patents.

In its response brief, Defendant cites to two district court cases that also pre-date *EchoStar*, for the proposition that "subject matter" only includes communications about the patents-in-suit. In *Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, No. 95 C 0673, 1996 WL 514993 (N.D. Ill. September 6, 1996), the court declined to order production of opinions about non-asserted patents that were continuations and divisions of asserted patents, which plaintiff argued were relevant to defendant's good-faith reliance on its counsel's opinions. 1996 WL 514993 at *1-2. In so holding, the court declined to follow *Viskase*, noting that unlike in that case, the waived material could be separated completely from the unwaived material. *Id.* Similarly, in *Solomon v. Kimberly-Clark Corp.*, No. 98 C 7598, 1999 WL 89570 at *5 (N.D. Ill. February 12, 1999), the court rejected the holding in *Steelcase* and allowed defendant to redact discussion of unasserted patents that were in the same opinion letter as discussions about the asserted patent. Specifically, the court held that the inclusion of a discussion about whether an unasserted patent infringed on plaintiff's product did not render that discussion relevant to the infringement analysis concerning the asserted patent. *Id.*

## III. Analysis

We decline to offer a definitive rule about whether communications on patents other than those asserted in a lawsuit could ever be included in the scope of a waiver under the attorney-client privilege; that is a job for the Federal Circuit, should it ever wish to do so. Similarly, we also decline to hold that patents in the same patent family are *per se* part of the same subject matter for the purposes of determining waiver of the attorney-client privilege. Instead, we hold that under the particular circumstances before us, Bard's use of the advice-of-counsel defense and waiver of the attorney-client privilege with respect to the Asserted Patents does not extend to opinions Bard may have obtained on the unasserted patents. In so holding, we reject the rulings in *Viskase* and *Steelcase*. Unlike the communications at issue in those cases, the opinions on unasserted patents Medline seeks are separate documents; they are not redacted and commingled analyses contained within communications about the Asserted Patents.

As Bard points out, there is a difference between (1) all related patents sharing the same specifications, and (2) a specific patent having particular individual claims associated with it and then analyzed in an opinion letter. The fact that both the Asserted Patents and various unasserted patents may have the same or similar claims, text, or drawings is not sufficient by itself to convince us that under the circumstances before us, communications regarding such unasserted patents are part of the same subject matter as the Asserted Patents. Our holding is – we believe – a reasonable limit on what could otherwise become an open-ended and poorly defined privilege waiver that meanders through a chain of patent continuations and divisions, becoming less and less similar to the original patents-in-suit. Without additional support from the Federal Circuit for such a broad waiver, we cannot subscribe to a rule that extends the notion of waiver of the attorney-client privilege, in this meandering fashion, to opinions on all patents in the same patent family no matter

10

how large or continuous that family becomes. Instead, we find that the holdings in *Heidelberg Harris* and *Solomon* are more predictive of the Federal Circuit's reasoning, as demonstrated by *EchoStar's* reference to the "same subject matter" encompassing "that patent," *i.e.* a particular patent, as opposed to a series of related patents within a broader patent family. Our holding represents a balancing that takes account of the competing principles narrowly construing the scope of a waiver of the attorney-client privilege and recognizing that "a party should not be able to selectively disclose privileged information that it believes works to that party's advantage, while concealing the rest." *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 121, 216 (N.D. Ill. 2001) (citations omitted).

Bard's resistance to producing opinions of counsel on unasserted patents is not an attempt to use those opinions as a sword while trying to shield production of others; it has declined to produce any opinion about any unasserted patent regardless of what that opinion says.[7] (Def. Resp. to Mot. at 8). We find that under the circumstances here, limiting waiver to communications about the Asserted Patents is a reasonable guidepost for determining the scope of waiver of the attorney-client privilege. Given our ruling, we will not order Bard to identify any opinions it may have obtained about the unasserted patents, which we decline to hold are included in the scope of Bard's waiver of privilege.

---

[7] Defendant points out that Medline dropped the '935 and '452 patents from its Final Infringement Contentions after decisions in Medline I and Medline II that Bard did not infringe these patents. (Def. Resp. to Mot. at 3.) Medline argues that it is nonetheless entitled to obtain opinions on unasserted patent '812, which is a division of patent '452, which itself is a continuation of patent '935.

## CONCLUSION

For the foregoing reasons, we DENY Plaintiff's Motion to Compel. (D.E. 209). Defendant Bard does not need to produce any opinions it may have obtained on unasserted patents, nor does it need to identify any such opinions in a privilege log. It is so ordered.

ENTER:

_____

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: August 2, 2019**